UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 11-CV-3690 (JFB) (ARL)
_____

PETER L. HOFFMAN AND LOTTE, LLC,

Plaintiffs,

VERSUS

TOWN OF SOUTHAMPTON, ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
September 28, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Peter Hoffman ("Hoffman") and Lotte, LLC ("Lotte"), together ("plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Town of Southampton ("Town"), the Board of Trustees of the Freeholders and Commonalty of the Town of Southampton ("Trustees"), Trustee Frederick C. Havemeyer ("Trustee Havemeyer"), Trustee Scott A. Strough ("Trustee Strough"), Senior Assistant Town Attorney Joseph R. Lombardo ("SATA Lombardo"), and Senior Bay Constable Theodore H. Sadleir ("SBC Sadleir") (collectively, "defendants"), for malicious abuse of process in connection with defendants' efforts to have plaintiffs remove a dock from plaintiffs' property.[1] Plaintiffs also seek a declaratory judgment pursuant to 28 U.S.C. § 2201, that the Trustees' policy of revoking legal preexisting, nonconforming uses and structures, is unconstitutional. Finally, plaintiffs assert state law claims for malicious prosecution and abuse of process.

Defendants filed a motion to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

---

[1] Plaintiffs withdrew their federal malicious prosecution claim by letter dated December 5, 2011, citing *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010), which held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." (Letter from Pls. to Hon. Joseph F. Bianco, Dec. 5, 2011, ECF No. 18.)

1

arguing that the federal and state malicious abuse of process claims should be dismissed because plaintiffs have not sufficiently alleged that defendants employed process with intent do harm or in order to obtain a collateral objective outside the legitimate ends of the process, and that the state malicious prosecution claim should be dismissed because defendants had probable cause to initiate the action and lacked malice.

For the reasons set forth below, the Court grants defendants' motion to dismiss the federal malicious abuse of process claim, but will give plaintiffs leave to replead to attempt, if they wish, to address the pleading defects identified in this Memorandum and Order. The Court will not address the state claims at this time because, if the plaintiffs cannot plead a federal claim that survives a motion to dismiss in an amended complaint, the Court will decline to exercise supplemental jurisdiction over any state law claims.

I. BACKGROUND

A. Factual History

The following facts are taken from the amended complaint and are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motion to dismiss and will construe them in a light most favorable to plaintiff, the non-moving party.

1. The Property

The property that is the subject of this action is located at 474 Jobs Lane, Bridgehampton, Town of Southampton, New York (the "property"). (Amended Complaint ("AC") at ¶ 17.) It was built in the late 1950s by Hoffman's mother, Lotte Hoffman. (*Id.*) Hoffman was granted sole ownership of the property in June 2005, then transferred ownership to Lotte, of which Hoffman is the sole and managing member. (*Id.* at ¶ 22.)

The property is situated off of Mecox Bay and includes "the waters and land under the waters of Jobs Creek in front of and adjacent to the premises." (*Id.* at ¶ 18.) The westerly line of the property extends into Jobs Creek. (*Id.*) The property includes a driveway, residence, 4' by 36' catwalk and 10' by 20' fixed dock. (*Id.*) The dock lies entirely on the property and is beyond the jurisdiction of the Trustees. (*Id.* at ¶ 19.) The catwalk and dock have been in place since the 1960s and, therefore, pre-date the requirements of the Trustees limiting the width of docks to six feet. (*Id.* at ¶ 21.)

2. Attempts to Secure the Permits

At some point after April 23, 2005, Hoffman called the New York State Department of Environmental Conservation ("NYSDEC") to determine the requirements for obtaining a NYSDEC Tidal Wetlands Permit to legalize the catwalk and dock. (*Id.* at ¶ 25.) Hoffman presented evidence confirming that the dock pre-dated the NYSDEC wetlands regulations, which were adopted in 1977. (*Id.* at ¶ 26.) On January 6, 2006, NYSDEC forwarded a "Warning Letter" to Hoffman which stated that NYSDEC observed a potential violation – specifically, the unpermitted catwalk and dock – but considered "this violation resolved" and reminded Hoffman that "any future regulated activity will require the appropriate permits." (*Id.* at ¶ 27.) NYSDEC told Hoffman several times that the "Warning Letter" operated as a permit. (*Id.* at ¶ 28.)

2

In November 2006, Hoffman contacted the Trustees to discuss the requirements for obtaining a dewatering permit. (*Id.* at ¶ 29.) Shortly thereafter, Trustee Strough, who, at the time, was President of the Trustees, spoke with Hoffman at the property concerning the dewatering permit. (*Id.* at ¶ 30.) The matter of the preexisting dock was raised, and Trustee Strough recommended that Hoffman simultaneously submit a permit application for the dock and the dewatering permit, along with the January 6, 2006 NYSDEC letter. (*Id.*) Strough stated that the permit application would be approved without hindrance in light of the NYSDEC approval and upon submission of the Trustee permit application, $250 filing fee, and NYSDEC warning letter. (*Id.*) Plaintiffs allege that the Trustees' permit for the dock was not required since the dock and catwalk were beyond the Trustees' jurisdiction. (*Id.* at ¶ 32.) Nonetheless, Hoffman submitted the application for the permits in January 2007. (*Id.*)

3. Threats of Prosecution

On January 23, 2007, Hoffman received a letter from Trustee Havemeyer, written on behalf of the Trustees, indicating that his application was incomplete and that the Trustees "do not permit dock floats larger than 6' by 20'." (*Id.* at ¶ 33.) The letter also stated, "It is important that you know that we do not grandfather pre-existing but non-conforming structures . . . [and] do not allow oversize 10' by 29' platforms as part of a 4' wide catwalk." (*Id.*) After receiving this letter, Hoffman attempted to reach Trustee Strough by phone several times, but Strough did not return Hoffman's calls. (*Id.* at ¶ 34.) On March 7, 2007, Hoffman received another letter from Trustee Havemeyer, which plaintiffs allege was written at Trustee Strough's direction. (*Id.* at ¶ 35.) The letter advised, "The serious problem is that the dock structure on your property does not have a permit and in its present form does not conform to our regulations . . . . [T]he [Trustees] discussed this situation at our March 5th meeting, and the [Trustees'] decision was that the structure is illegal and has to be removed immediately." (*Id.*) Hoffman attempted to contact Havemeyer, but Havemeyer instead "complained to Southampton Town Bay Constable Chris Kohnkon, who subsequently inspected the property on April 10, 2007." (*Id.* at ¶ 36.)

On April 16, 2007, Hoffman received another letter from Havemeyer, again written on behalf of the Trustees. (*Id.* at ¶ 37.) The letter stated that the dock was "constructed without a permit" and "cannot be legalized" because it violates Trustees' regulations. (*Id.*) The letter stated that the structure "must be removed immediately," and if it "is not removed within two (2) weeks of the date of this letter, the Bay Constables will be notified to file a list of violations with the court." (*Id.*)

According to Steven C. Resler, Deputy Bureau Chief of the Resources Management Bureau of the New York State Department of State ("NYSDOS"), removal of the catwalk and replacement with a new structure "would likely cause unnecessary physical damage to the area." (*Id.* at ¶ 41.) Shawn Barron, an environmental consultant opined that "removing the existing dock and catwalk would destabilize the shoreline and cause extensive damage to existing wetlands vegetation." (*Id.* at ¶ 42.) Plaintiffs did not remove the dock. (*Id.* at ¶ 45.)

4. Criminal Prosecution of Plaintiffs

On August 16, 2007, SBC Sadleir, acting upon the order of the Trustees, Strough and/or Havemeyer, filed with the

3

Justice Court Appearance Ticket No. 13849, charging plaintiffs with a violation of Section 111-30 (A) of the Town of Southampton Town Code ("Town Code") for allegedly constructing an illegal dock at the property without a Trustees permit. (*Id.* at ¶ 46.) Appearance Ticket No. 13849 was never served on plaintiffs. (*Id.*) At the time, under Section 111-39 (A) of the Town Code, a first violation of Section 111-30 (A) was punishable by a fine up to $350 and/or imprisonment up to 15 days. (*Id.* at ¶ 47.)

On August 18, 2007, Sadleir filed with the Justice Court a Criminal Court Information ("August 18, 2007 Information"), which was also not served on plaintiffs. (*Id.* at ¶ 49.) The August 18, 2007 Information stated that "on or about Thursday, August 16, 2007, at about 1:00 P.M." plaintiffs "wrongfully, intentionally, knowingly committed the offense of CONSTRUCTION WITHOUT A PERMIT in violation of" Section 111-30 (A) of the Town Code and that plaintiffs "did construct, place and maintain upon town waters and within the bay beach area a catwalk and dock without first obtaining the required permit from the Town Trustees contrary to said provisions of this statute in such case made and provided." (*Id.* at ¶ 49.)

On September 23, 2007, plaintiffs were served with Appearance Ticket No. 13852, which charged plaintiffs with a violation of Section 111-30 (A) of the Town Code. (*Id.* at ¶ 50.) On September 24, 2007, Sadleir filed with the Justice Court a Criminal Court Information ("September 24, 2007 Information"), which was also not served on plaintiffs, and again charged a violation of Section 111-30 (A) of the Town Code.[2] (*Id.* at ¶ 52.) On September 27, 2007, Hoffman learned of Appearance Ticket No. 13849 by email from Sadleir, with a copy sent to Assistant Town Attorney Kathryn Garvin ("ATA Garvin"). (*Id.* at ¶ 53.) Sadleir's email stated that he would not have submitted the information "until I knew for a fact that you'd been served. I apologize for that error. I did however request that the court information for the original ticket be withdrawn after issuing you ticket #13852 on 9/23." (*Id.*) Ticket No. 13849 nonetheless remained on the Justice Court's calendar. (*Id.* at ¶ 54.)

On December 19, 2007, plaintiffs were directed to appear in Justice Court. (*Id.* at ¶ 55.) In the meantime, on December 20, 2007, Hoffman obtained a "General Concurrence" from the NYSDOS, which confirmed that the existing dock is on the subject property, pre-dates New York State regulations of such structures, and that other nearby structures exceed the length of the structure. (*Id.* at ¶¶ 56-57.) The letter also stated that removing the catwalk and replacing it would likely cause unnecessary physical damage to the area. (*Id.* at ¶ 58.)

On April 22, 2008, the Town adopted Local Law No. 21 of 2008 amending Chapter 111 of the Town Code. (*Id.* at ¶ 60.) Local Law No. 21 made it an unclassified misdemeanor with increased penalties for a second and/or any subsequent violation of Section 111-30 (A). (*Id.*) On July 8, 2008, Hoffman obtained a formal permit from the NYSDEC. (*Id.* at ¶ 61.)

---

[2] The September 24, 2007 Information stated that plaintiffs "wrongfully, intentionally, knowingly committed the offense of FAILURE TO PROCURE PROPER PERMIT FOR DOCK in violation of" Section 111-30 (A) of the Town Code and that plaintiffs "did maintain a walkway and dock to provide access to town waters of Jobs Creek/Mecox Bay which was constructed behind the residence without first obtaining a permit from the Town Trustees." (AC at ¶ 52.)

4

Plaintiffs' attorney at the time, Dianne LeVerrier ("LeVerrier"), arranged to meet on July 22, 2008 with ATA Garvin and Havemeyer to negotiate a disposition of the matter. (*Id.* at ¶ 62.) Havemeyer did not appear, and Garvin advised that the Trustees' position was that the dock must be removed. (*Id.*) LeVerrier advised Garvin that she would move to dismiss the charges. (*Id.* at ¶ 63.) Garvin then allegedly threatened to issue additional summonses solely for the purpose of coercing and pressuring plaintiffs into refraining from (1) pursuing plaintiffs' right to defend themselves against criminal prosecution; (2) proving that the dock and catwalk are not illegal; (3) asserting that the commencement of the criminal prosecution was improper and defective; and (4) challenging the authority and jurisdiction of the Town and the Trustees. (*Id.* at ¶ 64.) LeVerrier explained to Garvin that issuing additional summonses while the motion to dismiss was pending would be harassing and wasteful. (*Id.* at ¶ 65.) LeVerrier made a motion in Justice Court requesting that the Town be enjoined from lodging additional charges until after the motion to dismiss was decided. (*Id.* at ¶ 65.) The Justice Court informed the parties that it lacked jurisdiction to grant such relief, but strongly suggested to Lombardo that it would be unreasonable to continue to issue summonses until after the matter was decided, and admonished Lombardo to not do so. (*Id.*) Nevertheless, a few days later, on August 2, 2008, Lombardo ordered Sadleir to issue and serve upon Hoffman Appearance Ticket No. 13856 to Lotte and Appearance Ticket No. 13857 to Hoffman. (*Id.* at ¶ 66.)

Because Local Law No. 21 had been adopted on April 22, 2008, these latest appearance tickets commenced the criminal prosecution of plaintiffs for a second and/or subsequent violation of Section 111-30 (A) and subjected plaintiffs to increased criminal penalties and/or additional punishment. (*Id.* at ¶¶ 67-68.) On August 2, 2008, Sadleir filed with the Justice Court a Criminal Court Information (the "August 2, 2008 Information"), which was not served on plaintiffs, for constructing or maintaining without a permit in violation of Town Code 111-30 (A).[3] (*Id.* at ¶ 69.)

On October 10, 2008, plaintiffs moved to dismiss the matters in their entirety. (*Id.* at ¶ 71.) On October 31, 2008, Sadleir filed with the Justice Court a Criminal Court Information ("October 31, 2008 Information"), which was not served on plaintiffs, charging plaintiffs with constructing a permit in violation of Section 111-30 (A).[4] (*Id.* at ¶ 72.)

On July 7, 2009, the Justice Court determined that the issue of jurisdiction

---

[3] The August 2, 2008 Information stated that plaintiffs "wrongfully, intentionally, knowingly committed the offense of CONSTRUCTION/ MAINTENANCE WITHOUT A PERMIT in violation of" Section 111-30 (A) of the Town Code and that plaintiffs "on or about August 2, 2008, did continue to maintain a dock which was floating upon the Town Waters of Sams Creek, a tributary of Mecox Bay, and which was secured to the Town Trustee bay bottom with wooden posts as well as a walkway constructed for the purpose of providing access to the shoreline and to the above described floating dock. The defendant has not obtained the required Trustee permit for constructing said dock." (AC at ¶ 69.)

[4] The October 31, 2008 Information stated that plaintiffs "wrongfully, intentionally, knowingly committed the offense of CONSTRUCTION WITHOUT A PERMIT in violation of" Section 111-30 (A) of the Town Code and that plaintiffs "[o]n or about August 2, 2008, a walkway and dock were observed as constructed or placed within the bay beach area/Sams Creek, a tributary of Mecox Bay, secured to the Town Trustee bay bottom with wooden posts, adjacent to and upon property owned or in control of by [Hoffman] without first obtaining a permit from the Town Trustees." (AC at ¶ 72.)

created a question of fact, necessitating a trial. (*Id.* at ¶ 73.) On April 7, 2010, the Town provided Hoffman with a title report that concluded that the property was bounded by Jobs Creek and that Hoffman did not own the lands underwater. (*Id.* at ¶ 74.) Hoffman's title expert reviewed the title report and found that it was in error concerning the property boundary. (*Id.* at ¶ 75.) On June 17, 2010, Hoffman's title report was submitted to the Town. (*Id.* at ¶ 76.)

On August 20, 2010, the parties appeared before the Justice Court and a trial date of September 27, 2010 was set. (*Id.* at ¶ 79.) On September 26, 2010, Lombardo contacted LeVerrier to inform her that the Town's title expert was on medical leave. (*Id.* at ¶ 80.) The Justice Court granted the Town's application for an adjournment and set the matter down for trial on November 16, 2010. (*Id.*) On November 9, 2010, LeVerrier went into labor and requested an adjournment. (*Id.* at ¶ 81.) An adjournment was granted and the trial was rescheduled to January 27, 2011. (*Id.*) On January 25, 2011, Lombardo contacted LeVerrier to advise that Sadleir was on vacation, and the trial was again adjourned. (*Id.* at ¶ 82.)

On February 4, 2011, the parties appeared in Justice Court before the Honorable Andrea H. Schiavoni and the Town moved to dismiss the charges. (*Id.* at ¶ 83.) Judge Schiavoni gave the parties an opportunity to brief the issues and adjourned the case until March 4, 2011. (*Id.*) On March 4, 2011, during a hearing before Judge Schiavoni, the Town moved to dismiss the charges. (*Id.* at ¶ 84.) Judge Schiavoni granted the Town's motion and dismissed all criminal charges against plaintiffs. (*Id.*)

### 5. Allegations Concerning Other Property Owners

Plaintiffs allege that defendants similarly mistreated other Southampton property owners. (*Id.* at ¶ 88.) Brady Family Holdings, LLC ("Brady") owns the premises at 726 Flying Point Road in Southampton, which is also situated off Mecox Bay. (*Id.* at ¶ 89.) On December 18, 2006, the Trustees issued a permit to Brady for an L-shaped dock, and on May 24, 2007, Brady installed a "jet-ski float" on the dock. (*Id.* at ¶¶ 89-90.) At the time, jet-ski floats were not regulated by the Trustees or the Town. (*Id.* at ¶ 90.) About two weeks later, Trustee Havemeyer demanded that Brady remove the jet-ski float. (*Id.* at ¶ 91.) Brady advised that the jet-ski was not prohibited, and resisted removing it. (*Id.*)

On August 16, 2007, Sadler filed with the Justice Court Appearance Ticket No. 13848 charging Brady with a violation of Section 110-30(A) for allegedly constructing an illegal dock without a Trustees permit. (*Id.* at ¶ 93.) On March 5, 2008, upon a showing to the Justice Court that the jet-ski float was not regulated at the time it was constructed, the charges were dismissed and the prosecution was terminated in Brady's favor. (*Id.* at ¶ 94.)

On April 22, 2008, the Town adopted Local Law No. 21, which included regulation of jet-ski floats. (*Id.* at ¶ 95.) On August 11, 2008, Sadleir issued and served upon Brady Appearance Ticket No. 13854, alleging a violation of Section 111-30(A) for failing to obtain a permit for the exact same jet-ski float. (*Id.* at ¶ 96.) On August 11, 2008, Sadleir filed with the Justice Court a Criminal Court Information charging Brady with a violation of Section 110-30(A) for constructing or maintaining a dock without a permit. (*Id.* at ¶ 97.) Brady filed a motion to

dismiss. (*Id.* at ¶ 98.) On July 19, 2009, Sadleir issued and served upon Brady Appearance Ticket No. 16130, alleging, once again, a violation of Section 111-30(A) for failing to obtain a permit for the same jet-ski float. (*Id.* at ¶ 99.) On July 19, 2009, Sadleir filed with the Justice Court a Criminal Court Information charging a violation of 111-30(A) for construction of a dock without a permit. (*Id.* at ¶ 100.) Brady filed another motion to dismiss. (*Id.* at ¶ 101.)

On November 10, 2009, the Justice Court dismissed the 2008 and 2009 prosecutions, finding that the jet-ski float constituted a preexisting, nonconforming use and structure. (*Id.* at ¶ 103.) Subsequently, Brady's attorney received two appearance notice letters from the Justice Court stating that there was an appearance date scheduled for January 8, 2010 with respect to Case Nos. 09-070626 and 09-080343. (*Id.* at ¶ 104.) Brady's attorney had never seen these case numbers before. (*Id.*) On January 8, 2010, Brady's attorney appeared in Justice Court. (*Id.* at ¶ 105.) Disclosure revealed that these cases pertained to Appearance Ticket Nos. 15210 and 16132, which had never been served on Brady or its attorney, and charged Brady with the same violation of Section 110-30(A) for the same jet-ski float. (*Id.*) Prosecutions for these ticket numbers were ultimately dismissed in Brady's favor. (*Id.*)

B. Procedural History

Plaintiffs filed the complaint in this action on August 1, 2011. Defendants filed a motion to dismiss the complaint on December 15, 2011. Plaintiffs filed an opposition to the motion to dismiss on January 24, 2012. Defendants filed a reply on February 7, 2012. On March 13, 2012, plaintiffs filed a letter seeking a pre-motion conference in anticipation of moving for leave to amend the complaint. After discussing the motion for leave to amend the complaint at oral argument on April 9, 2012, the Court granted plaintiffs leave to file an amended complaint and set a briefing schedule for defendants' motion to dismiss the amended complaint. Plaintiffs filed the amended complaint on April 16, 2012. Defendants filed the motion to dismiss the amended complaint on May 14, 2012. Plaintiffs filed an opposition to the letter motion on June 4, 2012. Defendants replied on June 11, 2012. The Court has fully considered the parties' arguments and submissions.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556

U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

#### A. Abuse of Process

##### 1. Legal Standard

In order to establish liability for malicious abuse of process under § 1983, a plaintiff must establish the claim's elements under state law as well as the deprivation of a constitutional right. *See Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994). A plaintiff may assert a malicious abuse of process claim where a defendant: "'(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook*, 41 F.3d at 80); *see also Sullivan v. LaPlante*, 1:03 CV 359 (OGS), 2005 WL 1972555, at *3 (N.D.N.Y. Aug. 16, 2005) ("[A]buse of criminal process is actionable under § 1983 as a denial of procedural due process." (citing *Cook*, 41 F.3d at 80)); *Dickerson v. Monroe Cnty. Sheriff's Dep't*, 114 F. Supp. 2d 187, 192 (W.D.N.Y. 2000) ("'In the criminal context, malicious abuse of process is by definition a denial of procedural due process.'" (quoting *Cook*, 41 F.3d at 80)).

##### 2. Application

Plaintiffs allege that defendants maliciously abused process by issuing additional summonses to plaintiffs after plaintiffs notified the Town that they were filing a motion to dismiss. Specifically,

Hoffman alleges that his attorney, LeVerrier, arranged to meet with ATA Garvin and Trustee Havemeyer on July 22, 2008 to discuss a consistency letter that NYSDOS had issued in December confirming that the existing dock was on the subject property, as well as a formal permit that NYSDEC issued to plaintiffs on July 8, 2008. About a year before this meeting – on August 16, 2007 – Sadleir had filed, but had not served Appearance Ticket No. 13849 and had filed the August 18, 2007 Criminal Information. Approximately one month later – on September 23, 2007 – Sadleir served plaintiffs with Appearance Ticket No. 13852 and filed the September 24, 2007 Criminal Information.

At the July 22, 2008 meeting, (at which Trustee Havemeyer did not appear), ATA Garvin told LeVerrier that the dock must be removed. LeVerrier responded that she would move to dismiss the charges. ATA Garvin then threatened to issue additional summonses. Plaintiffs allege that ATA Garvin threatened to issue the summonses "solely for the purpose of coercing and pressuring plaintiffs into refraining from: (1) pursuing [p]laintiffs' right to defend themselves against criminal prosecution; (2) proving that the dock and catwalk are not illegal; (3) asserting that the commencement of the criminal prosecution was improper and defective; and (4) challenging the authority and jurisdiction of the Town and the Trustees." (AC at ¶ 64.)

Although the Justice Court allegedly strongly suggested to SATA Lombardo that it would be unreasonable to continue to issue the same summonses until the matter was decided, and admonished him not to do so, SATA Lombardo ordered Sadleir to issue and serve Appearance Ticket No. 13856 to Lotte and Appearance Ticket No. 13857 to Hoffman. Plaintiffs allege that defendants knew that these tickets were issued and commenced the criminal prosecution of plaintiffs. On August 2, 2008, Sadleir filed the August 2, 2008 Information, which was not served on plaintiffs. Sadleir subsequently filed a fourth Criminal Information, on October 31, 2008.

Under the first prong of the test for malicious abuse of process, a defendant must have employed "regularly issued legal process to compel performance or forbearance of some act." *Savino* 331 F.3d at 76 (quoting *Cook*, 41 F.3d at 80). Defendants concede that the appearance tickets and criminal informations at issue constitute regularly issued legal process. (Defs.' Mem. of Law in Support of Mot. to Dismiss ("Mot. to Dismiss") at 8, Dec. 15, 2011, ECF No. 20.)

Under the second prong of the test for malicious abuse of process, the defendant must have acted "with intent to do harm without excuse [or] justification." *Savino*, 331 F.3d at 76 (quoting *Cook*, 41 F.3d at 80). Plaintiffs allege that Garvin threatened to issue the summonses solely to pressure plaintiffs into refraining from defending themselves and proving that the dock and catwalk were not illegal. Defendants assert that their actions in seeking the immediate removal of the catwalk and dock were justified because they had determined that the structures were illegal. (Mot. to Dismiss at 8, Dec. 15, 2011, ECF No. 20.) Since the Court holds, *infra*, that plaintiffs fail to allege that defendants used process in order to obtain a collateral objective that is outside the legitimate ends of the process, the Court need not address the second prong of the test for malicious abuse of process.[5]

---

[5] Additionally, defendants argue that, to allege malicious abuse of process under Section 1983, plaintiffs must plead facts showing that the

9

Under the third prong of the test for malicious abuse of process, the defendant must have used the process "in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 76 (quoting *Cook*, 41 F.3d at 80). In evaluating this element, the Second Circuit expressly distinguishes between a "malicious motive" and an "improper purpose"; only the latter suffices to meet the "collateral objective" prong of the abuse of process standard. *See Savino*, 331 F.3d at 77 ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action. . . . '[I]mproper motive is not enough.'" (quoting *Dean v. Kochendorfer*, 237 N.Y. 384, 390 (1924))); *see also Roeder v. Rogers*, 206 F. Supp. 2d 406, 414 (W.D.N.Y. 2002) (dismissing abuse of process claim on summary judgment because "malicious motive, without more, does not give rise to [such] a cause of action" (citation and quotation marks omitted)), *aff'd* 58 F. App'x 879 (2d Cir. 2003); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) ("A malicious motive alone . . . does not give rise to a cause of action for abuse of process."). "Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77.

Here, plaintiffs have failed to allege that defendants had a collateral purpose beyond pursuing, and prevailing in, plaintiffs' criminal prosecution. The Trustees never lodged new charges against plaintiffs – they merely filed an additional two informations (the August 2, 2008 Information and October 31, 2008 Information) alleging violations of the same Town Code section under which plaintiffs had already been charged, for the same violation – construction or maintenance of the dock and catwalk without a permit, and for violations on the same day (August 2, 2008).

Typical scenarios in which courts in this circuit have sustained a claim of malicious abuse of process involve prosecutions for reasons wholly outside of the initial prosecution. For example, in *TADCO Construction Corp. v. Dormitory Authority of the State of New York*, 700 F. Supp. 2d 253, 272 (E.D.N.Y. 2010), the defendant allegedly arrested the plaintiff for trespassing in order to influence a collateral contract dispute. The defendant's alleged purpose in arresting plaintiff was not actually to prosecute plaintiff for trespassing, but to use the arrest to influence the contract litigation. Here, by contrast, the defendants' alleged purpose in filing the additional informations was to continue to pressure plaintiffs in the same prosecution involving the same dock and catwalk. Defendants' purpose was, therefore, not improper or collateral. Similarly, in *Savino v. City of New York*, 331 F.3d 63, 68 (2d Cir. 2003), the Second Circuit granted summary

---

defendants deprived plaintiffs of a constitutional right. (Mot. to Dismiss at 10, Dec. 15, 2011, ECF No. 20.) In *Cook*, 41 F.3d at 80, however, the Second Circuit held that "section 1983 liability may lie for malicious abuse of criminal process," explaining that malicious abuse of process in the criminal context is "'by definition a denial of procedural due process.'" *Id.* at 80 (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977). "Procedural due process forbids the use of legal process for a wrongful purpose." *Id.* at 80 (citing *Torres v. Superintendent of Police*, 893 F.2d 404, 410 (1st Cir. 1990)). Accordingly, if a complaint sufficiently alleges malicious abuse of criminal process, it also sufficiently alleges the deprivation of procedural due process. However, as discussed *infra*, the Court finds, construing the facts in the light most favorable to the plaintiffs, that plaintiffs have not sufficiently alleged malicious abuse of process.

judgment to defendants where plaintiff alleged that they had prosecuted him for stealing a ring as "retaliation for the embarrassing media attention stemming from his allegedly exorbitant overtime pay." Because malicious motive alone cannot give rise to a claim of action for abuse of process, it was not sufficient for the plaintiff to allege that the defendants were seeking merely to retaliate against him by pursuing the arrest; rather, the plaintiff needed to claim that the defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* at 77. Here, plaintiffs have similarly not alleged that defendants aimed to achieve a purpose other than plaintiffs' criminal prosecution for the allegedly illegal dock and catwalk. In other words, even if the defendants had a vindictive or a vicious motive in bringing the additional charges against plaintiffs to coerce a disposition in the criminal prosecution, the objective of all of the actions was still to prevail on the prosecution, including the additional charges, rather than to achieve some objective collateral to the prosecution itself. Under these circumstances, given the allegations in the amended complaint, no collateral objective has been alleged.

Other courts, in jurisdictions with analogous abuse of process elements, have also emphasized that the collateral objective requirement is not satisfied by actions taken in prosecuting a case, even if done with a vindictive or vicious motive in an effort to prevail in the prosecution. For example, in *Broadway Management Services Ltd. v. Cullinet Software Inc.*, 652 F. Supp. 1501, 1502 (D. Mass. 1987), the defendant counterclaimed for malicious abuse of process after plaintiff sued defendant for Sherman Act, tort, and contract violations. In dismissing the counterclaim for malicious abuse of process, the court explained that, even if the plaintiff had an interest in causing defendant "to expend substantial time and money to defend against the claims," such interest was not an "ulterior motive." *Id.* at 1503. To constitute an ulterior motive, "there must be intention to use process for coercion or harassment to obtain something not properly part of the suit." *Id.*[6] The plaintiff had not "maliciously abused process by seeking damages from [defendant] for an allegedly wrongful termination of a contract even if [plaintiff] concurrently intended [defendant] to be burdened with the ordinary costs of defending such a lawsuit." *Id.* at 1504; *See generally Lyons v. Midwest Glazing, L.L.C.*, 235 F. Supp. 2d 1030, 1042 (N.D. Iowa 2002) ("if an individual does no more than initiate and prosecute a criminal or civil action to its authorized conclusion, no abuse of process can be shown, regardless of the individual's malicious intent in doing so" (citations omitted)); *Bayer AG v. Sony Electronics, Inc.*, 229 F. Supp. 2d 332, 368 (D. Del. 2002) (rejecting abuse of process claim where Sony asserted that Bayer's ulterior purpose in filing the lawsuit and pursuing the litigation was to coerce a settlement), *aff'd* 83 F. App'x 334 (Fed. Cir. 2003) (per curiam); *Chamberlain v. Lishansky*, 970 F. Supp. 118, 122 (N.D.N.Y 1997) (police investigators who tampered with evidence at plaintiff's criminal trial did not abuse process because "the objective of their tampering was firmly within the scope of the legitimate, intended use of the process – to convict a hit-and-run drunk driver"); *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. Ct. App. Nov. 5, 1980) (no malicious abuse of process where patient "merely filed a counterclaim" of medical malpractice in

---

[6] The court in that case also noted that a party's "interest against defending groundless actions brought maliciously is protected by the ability to bring an action for [the] tort of malicious prosecution." *Broadway Mgmt. Servs.*, 652 F. Supp. at 1503. n.1.

response to small claims case by physician to collect bill and subsequently withdrew the counterclaim, even though physician alleged that patient filed the counterclaim "with the ulterior motive of coercing settlement").[7]

In sum, construing the allegations in the light most favorable to plaintiffs, issuing two additional informations charging violations of the same Town Code section for the same alleged violation occurring on the same date – all in an effort to prevail in the prosecution – does not constitute a collateral objective, even if done with a motive to exert pressure on the litigant to resolve the case. Accordingly, based upon the allegations as pled, plaintiffs' federal malicious abuse of process claim fails.

Although plaintiffs have not requested leave to replead in their opposition papers, the Court has considered the issue. Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, it is well settled that leave to replead can be denied where it is clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied"); *accord Dluhos v. Floating and Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 70 (2d Cir. 1998). Based upon a review of the complaint and the plaintiffs' opposition to defendants' motion, it appears highly unlikely that plaintiffs will be able to correct the above-referenced legal defect by alleging that defendants sought a collateral objective independent of winning the prosecution. However, even though it appears highly unlikely that plaintiffs can correct these pleading defects, the Court in an abundance of caution will give them one opportunity to replead, if plaintiffs believe that they can amend the complaint to state a federal cause of action.[8]

---

[7] The Court is aware of the language in a prior opinion, *Mangino v. Incorporated Village of Patchogue*, 739 F. Supp. 2d 205, 232-33 (E.D.N.Y. 2010), which suggested that the issuance of repeated tickets can be the basis of a federal malicious abuse of process claim. However, the primary focus of defendants' motion in that case was the probable cause issue, not the collateral objective requirement. In fact, the Court subsequently granted defendants' motion for reconsideration of the above-referenced opinion and granted summary judgment on the malicious abuse of process claim on qualified immunity grounds. *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011). In any event, to the extent that *Mangino* could be read to hold that bringing additional charges in order to allegedly coerce a plea or deter an individual from pursuing his or her rights constitutes a "collateral objective" for purposes of a malicious abuse of process claim, the Court concludes that is an inaccurate statement of the law for the reasons discussed in this Memorandum and Order, as well as in the other case authority cited herein.

[8] Defendant Lombardo also moves to dismiss on the ground of absolute immunity and all the individual defendants move to dismiss on the ground of qualified immunity. With respect to defendant Lombardo, plaintiffs argue that his conduct in encouraging the police to issue the appearance tickets was investigatory, and therefore not protected by absolute immunity. *See Burns v. Reed*, 500 U.S. 478, 496 (1934) (holding that advising police officers as to existence of probable cause in particular case was not protected by absolute immunity); *Amaker v. Coombe*, 96 Civ. 1622, 1998 U.S. Dist. LEXIS 14523, at *21 (S.D.N.Y. Sept. 16, 1998) (denying absolute immunity to prosecutor who "was advising, indeed encouraging, the police to file a complaint against the

B. Declaratory Judgment

Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, "that the Trustees' policy of revoking (or "not grandfather[ing]") legal preexisting, nonconforming uses and structures, is unconstitutional." (AC ¶ 155.) Plaintiffs have not articulated in the amended complaint or in any of their motion papers what provision of the Constitution the defendants have allegedly violated by maintaining this policy. Thus, the Court is not able to discern the nature of plaintiffs' declaratory judgment claim, and whether it is duplicative of the other claims. Furthermore, the Court cannot properly evaluate the issue of plaintiffs' standing with respect to the declaratory judgment action until they properly plead a constitutional violation. Accordingly, the Court will allow plaintiffs to replead the declaratory judgment portion of the complaint to clarify exactly what constitutional argument is being made.

C. *Monell* Claim

Plaintiffs allege a policy, custom, usage, and/or practice of the Bay Constables charging property owners with violations of the Town Code and Trustees' Rules and Regulations without probable cause or where the Trustees lack jurisdiction, and allege that each Trustee knew about this policy. (AC ¶¶ 109-10, 116-17.) Plaintiffs further allege that SATA Lombardo and the Trustees knew of, condoned, encouraged, insisted upon, and enforced the Trustees' policy of revoking legal preexisting but non-conforming uses. (*Id.* at ¶¶ 130-31; 139.)

Under *Monell*, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694; *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44).

However, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("A municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*."); *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who

---

plaintiff," which the court found was "similar to providing legal advice to the police" during investigation). However, because plaintiffs have not yet pled a plausible federal claim for the reasons discussed *supra*, the Court cannot fully assess the immunity issue at this juncture. The Court will consider the immunity issue if defendant is able to articulate a plausible federal claim in a second amended complaint.

seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who . . . subjected, or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights." (quoting 42 U.S.C. § 1983)).

To the extent that plaintiffs attempt to assert that the Town has an unconstitutional policy (implemented by the individual defendants) of abusing process, that claim suffers from the same defect as the claim against the individual defendants – namely, plaintiffs have not alleged a collateral objective that can form the basis of a malicious abuse of process claim. Specifically, an allegation that the objective of the abuse of process by the Town (pursuant to some policy) was to win the case against plaintiffs is not a collateral objective for purposes of an abuse of process claim. Thus, plaintiffs have failed to plead a plausible *Monell* claim against the Town.[9] However, as with the individual defendants, the Court will provide plaintiffs with an opportunity to replead to articulate a collateral objective, if it exists, in connection with the Town.

IV. CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss the federal malicious abuse of process claim (including the *Monell* claim), and the declaratory judgment claim, but grants leave to replead. Because it is still unclear whether any federal claim can survive a motion to dismiss, the Court declines at this juncture to address plaintiff's state law claims.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  September 28, 2012
        Central Islip, NY

\* \* \*

Plaintiffs are represented by Brian S. Cohen, Cohen Law Group, P.C., 2 Greenwich Office Park, Suite 300, Greenwich, CT 06831. Defendants are represented by Richard C. Cahn, Cahn & Cahn, LLP, 22 High Street, Suite 3, Huntington, NY 11743 and Kathryn Valentine Garvin, Southampton Town Attorney, 116 Hampton Road, Southampton, NY 11968.

---

[9] To the extent that plaintiffs allege that the Town has a policy of revoking legal, pre-existing, non-conforming uses and structures and that such policy is unconstitutional, the Court concludes (as noted in the Declaratory Judgment analysis) that such a claim must be repled because it is unclear to the Court precisely what type of constitutional violation is being alleged.